**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**PAUL JORGENSON,**

    **Petitioner,**

**v.**                                           **CIVIL ACTION NO. 5:11cv174**
                                                     **(Judge Stamp)**
**TERRY O'BRIEN, Warden,**
**U.S.P. Hazelton,**

    **Respondent.**

## AMENDED REPORT AND RECOMMENDATION

### I. Background

On November 30, 2011, the *pro se* petitioner, Paul Jorgenson, an inmate at U.S.P. Hazelton, in Bruceton Mills, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Along with his petition, Jorgenson included the required filing fee.

In his petition, the petitioner challenges a decision of the United States Parole Commission (USPC). The undersigned conducted a preliminary review on December 5, 2011, determining that summary dismissal was not appropriate at that time. Accordingly, a "show cause" order was entered. On January 3, 2012, the respondent filed a motion for an extension of time in which to respond, which was granted by Order entered the same day. On January 31, 2012, the respondent filed a Motion to Dismiss, or for Motion for Summary Judgment and Response to Show Cause Order, and a Motion to Seal Unredacted Documents. The Motion to Seal was granted on February 2, 2012, and because the petitioner was proceeding *pro se,* a Roseboro[1] Notice was issued the same day. On February 15, 2012, the petitioner filed a response, titled "Petitioner's Traverse." On February 28, 2012, the respondent filed a Reply and another Motion to Seal Unredacted Documents. That motion was granted on February 29, 2012.

---
[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

1

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, *et seq.*, is ripe for review.

## II.  Factual and Procedural History

On January 5, 1977, petitioner, then 31 years old, along with three other inmates, escaped from the Arizona State Prison by taking a guard hostage and stealing his car. Armed with a .308 rifle and a .38 caliber revolver, the escapees traveled to Tucson, where they commandeered a married couple's apartment. After releasing the couple, they took another individual hostage, forcing him to use his car to drive them to Albuquerque, New Mexico. Once there, they forced their way into another individual's apartment, where they then held the Tucson hostage and the Albuquerque apartment tenant hostage while they planned an armed bank robbery. After netting $14,000 in the bank robbery and splitting the proceeds, they traveled to Denver in the second hostage's car with both hostages, where they ultimately left them, bound but apparently unharmed, in a motel room, and each went their separate ways.[2]

On February 1, 1977 in the District Court of New Mexico, the petitioner was charged with conspiracy, in violation of 18 U.S.C 371; bank robbery, in violation of 18 U.S.C. 2113(a)(d); bank larceny in violation of 18 U.S.C. 2113(b); kidnapping, in violation of 18 U.S.C. 1201; interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. 2312; and aiding and abetting, in violation of 18 U.S.C. 2. On April 1, 1977, after a five-day trial, petitioner was convicted on all counts. Three days later, on April 4, 1977, he was sentenced to five years on Count One; Count Three was merged into Count Two, and a single sentence of twenty-five years was imposed, with the sentences on Counts One and Two to run concurrently

---

[2] Petitioner's April 3, 1977 New Mexico District Court sentencing memorandum reveals that petitioner, also listed as "aka Harry Edward Johns, Jr.," was finally apprehended in the western district of New York on February 24, 1977. However, before being apprehended there, he apparently was charged in that district for a January 27, 1977 robbery and possession of a weapon, under the name Karl J. Brumberger, which he claimed was his true name. However, petitioner's father's name was listed as Harry E. Johns, of Batavia, IL. (Dkt.# 11-1 at 2 - 3).

with each other, but consecutively to any other sentence imposed; fifty years on Count Four; five years on Count Six, with the sentences on Counts Four and Six to run concurrently with each other but consecutively to any other sentences imposed; fifty years on Count Five and five years on Count Seven, with the sentences on Counts Five and Seven to run concurrently with each other but consecutively to any other sentences imposed. (Dkt.# 11-2). Accordingly, petitioner received an aggregate term of imprisonment of one-hundred and twenty-five years. (Dkt.# 11-3 at 3).

The petitioner's statutory release date was determined to be January 14, 2061; his date of expiration full term date was determined to be February 9, 2102; and upon serving two thirds of his sentence, he becomes parole-eligible on October 11, 2053. (Id.).

The USPC conducted petitioner's first parole hearing in 1988, after he had been incarcerated for 140 months. By Notice of Action ("NOA") dated November 1, 1988, the USPC continued the petitioner to a 15-year reconsideration hearing in October, 2003.[3] In reaching this decision, the USPC found that petitioner's aggregate guideline range of 500-748 months should be served before release for cases with good institutional adjustment and program achievement. However, the USPC determined that a decision more than 48 months above the minimum guideline range was warranted, because since commitment, petitioner had lost 1329 statutory good time days for nine separate attempted escapes; three incidents of possession of a sharpened instrument; seven incidents involving possession of explosives or zip gun materials; and he had had twenty-one incidents of an administrative nature. Further, he had twice committed Category Three criminal behavior inside the prison by assaulting prison officers, once in 1978 and again in 1979, adding 12-16 months for each assault to his original guidelines. After review of all the relevant factors and information presented, the USPC determined that a decision outside the

---

[3] Petitioner did not apply for a hearing in 2003. (Dkt.# 11-5 at 3).

guidelines was not warranted. As required by law, the NOA scheduled a statutory interim hearing during October 1990. (Dkt.# 11-4 at 1 – 2). Petitioner did not appeal this determination.

At a 1994 statutory interim hearing ("SIH"), petitioner was assessed an additional rescission guideline behavior of 8-16 months for another escape in 1992, increasing his overall guidelines to 508 – 764 months. (Dkt.# 11-5 at 4).

Presumably after a 1996 SIH,[4] by NOA, dated October 28, 1996, petitioner was continued to a 15-year reconsideration hearing in October 2003. He was advised that retroactivity did not apply to him, because his recalculated severity rating and recalculated salient factor risk were no more favorable than under the prior calculation. Additionally, because he had committed behavior constituting new Category Three severity criminal conduct in a prison facility (possession of a hazardous tool, a screwdriver with a three inch blade), an additional guideline range of 12-16 months was assessed. Further, because he had again attempted to escape, an additional 8-16 months was added to his original guideline range. His aggregate guideline range was found to be 20-32 months, to be added to his original guideline range of 500-748 months. Accordingly, a decision outside of the guidelines was not found warranted. As required by law, he was scheduled for a SIH during October 1998. (Dkt.# 11-7 at 11).

Presumably after a 1999 SIH, by NOA dated February 8, 1999, petitioner was continued to a 15-year reconsideration hearing in October, 2003. He was again advised that retroactivity did not apply to him, because neither his recalculated severity rating nor his recalculated Salient Factor risk category was any more favorable that they were under the prior calculation, and there had been no regulatory or procedural changes since his previous hearing that would positively

---

[4] The record is incomplete as to the dates of most of the SIHs or the hearing examiners' reports of them.

impact either his Offense Severity or Salient Factor Scoring. As required by law, he was scheduled for a SIH during January 2001. (Dkt.# 11-7 at 13).

Presumably after a 2001 SIH, by NOA dated May 19, 2001, the USPC reiterated its position stated in the February 8, 1999 Notice of Action, continuing petitioner to a 15-year reconsideration hearing date in October 2003, and, as required by law, scheduled him for a SIH in April, 2003. (Dkt.# 11-7 at 14).

On June 12, 2006, petitioner's Reconsideration hearing was held. At that point, as of June 6, 2006, petitioner had been incarcerated 352 months, 192 months below the bottom of the guidelines. (Dkt.# 11-5 at 5). The hearing examiner noted that since petitioner's 1994 SIH, he had incurred four additional infractions[5] which added 36-50 months to his guidelines range, increasing his total guideline range to 544-814 months, but that he had completed 31 educational/vocational courses since being incarcerated. (Id.). By NOA dated July 31, 2006, the USPC continued petitioner to a 15-year reconsideration hearing in June, 2021. In reaching its decision, the USPC found that a guideline range of 100-148 months should be served before release, for cases with good institutional adjustment and program achievement. However, the USPC determined that after review of all the relevant factors and information presented, a decision outside the guidelines was not warranted. As required by law, the Notice of Action scheduled a statutory interim hearing in June 2008. (Dkt.# 11-6 at 2).

On August 10, 2006, petitioner filed an appeal of the USPC's July 31, 2006 decision with

---

[5] Petitioner had incurred three incident reports for possession of a hazardous tool (escape paraphernalia, such as multiple cutting tools; emery cloth sandpaper; homemade screwdrivers; credit cards; blank money market checks; and a jeweler's saw blade) and one for destruction of property (tampering with the window of a cell). (Dkt.# 11-5 at 2-4).

5

the National Appeals Board.[6] On November 22, 2006, by NOA on Appeal, the National Appeals Board affirmed the UPSC's July 31, 2006 decision. (Dkt.# 11-8).

On September 24, 2008, petitioner received another SIH hearing. The hearing examiner found that petitioner had had an excellent prison record for the previous two years and had incurred no disciplinary infractions. Based on petitioner's Superior Program Achievement, the examiner recommended a reduction of 1 year from his original 15-year reconsideration hearing date of June 2021. (Dkt.# 11-11 at 18). By NOA dated October 15, 2008, however, the USPC again reiterated its prior position, declined the hearing examiner's recommendation and continued petitioner to a 15-year reconsideration hearing date at the originally-scheduled date in June, 2021. (Dkt.# 11-9 at 1). As required by law, it scheduled petitioner for a SIH in September, 2010. (Id.). On October 24, 2008, petitioner appealed the USPC's October 15, 2008 decision, alleging the same grounds as raised in his previous appeal of August 10, 2006, but with the additional argument that his much-improved prison conduct since 2006 warranted a more lenient decision, and attaching various exhibits. (Dkt.# 11-10 at 1 - 12). By NOA on Appeal, dated March 16, 2009, the National Appeals Board affirmed the USPC's October 15, 2008 determination for the same reasons it outlined in its November 22, 2006 NOA on Appeal. (Dkt.# 11-12 at 1).

On September 28, 2010, petitioner received another SIH hearing. By NOA dated October 12, 2010, the USPC again reiterated its position, continuing petitioner to a 15-year reconsideration hearing date in June, 2021, but scheduling him for a SIH in September, 2012.

---

[6] Petitioner alleged that: his guidelines were calculated incorrectly; many of the allegations of his institutional misconduct were fabricated, either by other inmates or by officers, for a variety of motives; there were mitigating circumstances to excuse his misconduct; the USPC's decision was based on erroneous information; the USPC did not follow correct procedure by fully investigating all his claims; there was "significant information in existence" and "secret documents" on the Marion Control Unit that should be checked; he was entitled to a more lenient decision on compassionate grounds; and none of his misconduct ever resulted in violence or injury to another person.

(Dkt.# 11-9 at 2). On October 21, 2010, petitioner appealed the USPC's October 12, 2010 decision, again reiterating the same grounds raised in his prior appeals, and attaching more documentation, showing his program achievements. (Dkt.# 11-11 at 1- 21). By a December 13, 2010 NOA on Appeal, the National Appeals Board affirmed the USPC's decision for the same reasons as stated in its Notices of Action of Appeal dated November 22, 2006 and March 16, 2009. (Dkt.# 11-12 at 2).

On January 21, 2011, petitioner submitted an Inmate Request to Staff, requesting to be paroled and citing 45 FR §44925. On March 1, 2011, he submitted a BP-8 to his Unit Manager, and received a response on March 9, 2011, advising that his next hearing was set for September 2012. On March 12, 2011, he submitted a Request for Administrative Remedy to the Warden, and on March 22, 2011, he received the Warden's response, advising that his last NOA dated December 13, 2010 indicated there was to be no change in his 15-year Reconsideration date of June 2021, and reiterating that his next SIH hearing was set for September 2012. On March 30, 2011, petitioner appealed the Warden's response to the Regional Director of the Mid-Atlantic Region, and on April 4, 2011, that appeal was denied. On May 4, 2011, he appealed that denial to the BOP's office of General Counsel, and on July 5, 2011, that appeal was also denied. (Dkt.# 11-13 at 1-8).

On February 2, 2011, petitioner submitted an Inmate Request to Staff, requesting to be paroled pursuant to 18 U.S.C. § 4205. On March 9, 2011, he received a response from his Unit Manager, stating his request had been reviewed, and his most recent NOA indicated that his next hearing was set for September 2012. On March 12, 2012, petitioner submitted a Request for Administrative Remedy the Warden, and on April 19, 2011, received a response advising that his request for consideration of a compassionate release under 18 U.S.C. 4205(g) was denied. The

7

Warden noted that petitioner had not provided a proposed release plan and did not include any extraordinary or compelling circumstances which could not have been reasonably foreseen by the courts at the time of sentencing. On April 27, 2011, petitioner appealed the Warden's decision to the Regional Director, Mid-Atlantic Region. On May 26, 2011, the Regional Director denied his appeal, noting that the Warden's response indicated that petitioner was not predictably terminally ill, and that the denial of compassionate release was in accordance with BOP policy, Program Statement 5050.46. On September 21, 2011, petitioner appealed the Regional Director's decision to the BOP's General Counsel. On November 10, 2011, the appeal was denied.

On March 18, 2011, petitioner wrote to Steven Husk, Parole Hearing Coordinator for the USPC, requesting that a 30-year mandatory parole hearing be scheduled for him. (Dkt.# 17-1 at 3). On April 13, 2011, he received a reply from a J.C. Bradford, Correspondence Specialist at the DOJ/USPC, advising him that his next Statutory Interim Hearing was scheduled for September 1, 2012, and advising him on the procedure to apply for parole.

Petitioner filed his instant petition pursuant to 28 U.S.C. §2241 on November 30, 2011.

### III. Contentions of the Parties

**A. The Complaint (Dkt.# 1)**

The petitioner contends that despite having served a total of almost 35 years since being incarcerated in February, 1977, he has not been paroled or given a timely mandatory parole hearing pursuant to 18 U.S.C. §4206(d).

Further, he alleges, the U.S. Parole Commission ("USPC") and Bureau of Prisons ("BOP") have de-aggregated his previously aggregate sentence of 125 years, causing him to lose the "good time" credit he already earned on the 35 years he has served, such that now he can no

longer receive any credit for "good time" or a mandatory parole, as required pursuant to 18 U.S.C. §4206(d).

Petitioner contends that he has exhausted his administrative remedies with regards to his claims.

As relief, he requests that the Court order the USPC grant parole to him. If the U.S. Parole Commission does not comply, he requests that the Court order the respondent to release him immediately on a writ of habeas corpus.

## B. **Motion to Dismiss or for Summary Judgment and Memorandum in Support (Dkt.# 10 and 11)**

The respondent argues that the petitioner is not eligible for mandatory parole. Further, he is not entitled to "good time" credit against his mandatory parole date, and even if he were, he has no constitutional right to be released before his sentence expires. In response to petitioner's request to be released on a writ of habeas corpus if the UPSC refuses to parole him, the respondent points out that the proper remedy under those circumstances would be a writ of mandamus, not a writ of habeas corpus. Finally, the respondent contends that petitioner did not ask the USPC to schedule a mandatory parole hearing for him, and he has failed to exhaust his administrative remedies concerning his eligibility for mandatory parole consideration.

## C. **Petitioner's "Traverse" in Response to Motion to Dismiss (Dkt.# 16)**

Petitioner generally reiterates his claims and attempts to refute the respondent's arguments on the same, contending that he has been credited with 15,000 statutory "good time" days since being incarcerated in February 1977. He avers that he was eligible to be paroled on February 9, 1987, and that the BOP and the USPC have violated his Due Process right under 18 U.S.C. §4206(d) to mandatory parole by de-aggregating his 125-year sentence "to erroneously project a sentence satisfaction date of October 11, 2053[.]" He argues that under the criteria of

18 U.S.C. §4206(d), institutional misconduct record already previously considered in prior hearings cannot be reconsidered, stressing that his last misconduct occurred "many years"[7] prior to his most recent SIH.  Further, he points out, the respondent has omitted mention of his record of positive achievement in its response.  He denies the respondent's claim that he failed to request that a mandatory parole hearing be scheduled, and attaches documentation in support, implying that the respondent deliberately withheld these documents from its response.

Finally, petitioner urges this Court to consider its decision in Uhuru v. O'Brien, No. 2:10cv105 (N.D.W.V., filed Sept. 7, 2010), wherein this Court found that Uhuru, a military prisoner serving a life sentence[8] for three violations of the Uniform Code of Military Justice, including two premeditated murders, was transferred from military custody to the BOP. After his first USPC parole hearing continued him to a 15-year reconsideration date 36 years from the date he was sentenced, Uhuru successfully challenged his eligibility for a mandatory parole hearing pursuant to 18 U.S.C. §4206(d), and ultimately was in fact paroled. Petitioner argues that he, like Uhuru, is entitled to the same result.

**D.  Respondent's Reply (Dkt.# 18)**

The respondent reiterates its position that petitioner continues to misinterpret 18 U.S.C. §4206(d); further, petitioner is not yet eligible for mandatory parole and has failed to exhaust his administrative remedies.  Attached to its response are copies of the documents alleged by petitioner to have been withheld; the respondent avers that they were located in a stack of 'to be filed' documents, and therefore were not available in petitioner's USPC file when it filed its motion to dismiss.  Further, the respondent argues, petitioner's reliance on the Uhuru decision is

---

[7] He contends that he "has maintained clear conduct since June of 2004."  (Dkt.# 16 at 7).

[8] Uhuru's life sentence was later reduced to 97 years.

inapposite, as Uhuru was serving a single sentence, not an aggregate sentence of consecutive sentences.

## IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its

face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Analysis

### A. Exhaustion

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See Id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In this case, the petitioner clearly has not exhausted his administrative remedies. A review of the materials provided by the respondent show that of the two administrative grievances filed by petitioner (Administrative Remedy No. 631444 and Administrative Remedy No. 632228), though both were fully exhausted, neither included the specific challenges that petitioner is now raising in the instant complaint. Petitioner's present claims are that having served almost 35 years, he is entitled to either "timely mandatory parole" or a "parole hearing pursuant to 18 U.S.C. §4206(d)," and that the USPC and the BOP have de-aggregated his previously aggregate sentence of 125 years, causing him to lose good time credit earned.[9] Pursuant to the holding in Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on*

---

[9] In Administrative Remedy No. 631444, filed on January 21, 2011, petitioner cited 45 FR 44925, and requested to be paroled by the BOP, stating that he had served 34 years of his sentence, and that "the crime I was convicted of resulted in no physical or psychological injuries. I have not incurred any new charges." (Dkt.# 11-13 at 8). In Administrative Remedy No. 632228, filed on February 2, 2011, petitioner merely requested that the BOP parole him pursuant to 18 U.S.C. §4205(g). (Dkt.# 11-14 at 9).

*other grounds,* and United States v. Barnette, 644 F.3d 192 (45h Cir. 2011), these issues were not fairly presented to the BOP administratively. In Matthews, *supra,* the Fourth Circuit held that "the ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not suffice." Id. at 911.

Accordingly, the court could dismiss this matter without prejudice and require the petitioner to exhaust his administrative remedies before refiling if he were dissatisfied with the BOP's response to the administrative remedy process. However, it is clear that the petitioner's underlying claims are absolutely without merit and should be dismissed with prejudice.

Moreover, relief under 28 U.S.C. § 2241(c)(3) is predicated upon a showing that a prisoner is "in custody in violation of the Constitution or law or treaties of the United States," but here, nowhere in his complaint did petitioner raise any constitutional challenge; he did not hone his claim to include a violation of Due Process until he filed his "Traverse." Absent some type of alleged constitutional violation or other defect in his parole proceedings, this Court does not have the authority to grant petitioner the relief he seeks.

**B. Sentence Calculation**

As noted above, in February 1977, the petitioner was convicted in the District of New Mexico of conspiracy, bank robbery; bank larceny, kidnapping, interstate transportation of a stolen motor vehicle, and aiding and abetting. On April 4, 1977, he was sentenced to an aggregate sentence of 125 years (25, 50, and 50 years, respectively, with several counts merged into one another earning concurrent sentences that were consecutive to other sentences imposed). (Dkt.# 11-2). Petitioner now claims he is entitled to mandatory parole, or a mandatory parole hearing, pursuant to 18 USC § 4206(d).

Parole eligibility under 18 USC § 4206(d) provides as follows:

> "(d) Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole **after having served two-thirds of each consecutive term** or terms, **or after serving thirty years** of **each consecutive term or terms of more than forty-five years** including any life term, **whichever is earlier**: **Provided, however, That the Parole Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime**."

18 USC § 4206(d) (emphasis added).

Setting aside for the moment petitioner's long history of institutional rules and regulations violations while incarcerated, or whether, if released, there is a reasonable probability that he might again commit a crime, petitioner is, as the respondent contends, seriously misconstruing the applicability of 18 U.S.C. § 4206(d) to his situation. Because petitioner is serving an aggregate sentence of three consecutive sentences of twenty-five, fifty, and fifty years, for a total of one-hundred twenty-five years, at the very earliest, he only becomes statutorily eligible for parole after he has served two-thirds of *each* consecutive term, or, in the case of a term of more than 45 years, at least 30 years of that term. Hackley v. Bledsoe, 350 Fed. Appx. 599, 2009 WL 3471092 (3rd Cir. 2009)(a prisoner serving a life term plus three consecutive 10-year terms is "not eligible for mandatory parole after spending thirty total years in custody; he is only eligible for mandatory parole after serving two-thirds of each component of his federal sentence."; United States v. Smith, 234 F.3d 1279 (9th Cir. 2000)(providing release on parole after thirty years for each consecutive term including any life term). Petitioner must serve two thirds of his 25-year sentence, or 16 years and 8 months, plus a minimum of thirty years on each of his two fifty-year sentences, for a total of 76 years and 8 months before becoming statutorily *eligible* for mandatory parole on October 11, 2053.

16

Moreover, eligibility for parole is not a *guarantee* of parole; release under 18 USC § 4206(d) is not automatic. Despite petitioner's insistence that has "maintained clear conduct since June of 2004," for the first 27 years of his now-over-35-years' imprisonment he engaged in frequent and serious institutional misconduct, including at least 11 escapes/attempted escapes, numerous occasions of possession of escape paraphernalia, explosive devices, weapons, or components of weapons, not to mention at least two separate assaults on prison officers. Even when petitioner has his June 2021 Reconsideration hearing, the USPC must deny mandatory parole if it finds that petitioner has committed a serious rule infraction at any time during his incarceration, or if it deems it reasonably probable that he would commit a new crime if released. LaMagna v.U.S. Bureau of Prisons, 494 F. Supp. 189, 194 (D. Conn. 1980) ("'mandatory' parole... at the two thirds point is not a certainty; this parole is expressly conditioned upon a Parole Commission finding that the inmate will not be a risk to himself or society..."). Hence, a prisoner seeking mandatory parole is subject to a hearing procedure under which the USPC may evaluate whether he qualifies for release. *See* 28 C.F.R. § 2.53 (governing mandatory parole); U.S. Parole Commission Rules & Procedures Manual, Notes and Procedures ¶2.53-01 (review procedure).

In making such a parole decision, the USPC may consider official reports of a prisoner's prior record, reports from the staff of the facility where the prisoner is confined, and any other relevant information concerning the prisoner that is reasonably available. See 18 U.S.C. §4207. Furthermore, in determining parole guidelines, the Commission's regulations permit it to take into account "any substantial information available to it provided the prisoner is apprised of the information and afforded an opportunity to respond." See 28 C.F.R. §2.19(c).

17

The multiple crimes for which petitioner is presently convicted (not "the crime" as petitioner stated in Administrative Remedy No. 63144), included multiple kidnappings, carjackings and an armed bank robbery, all while out on escape from incarceration from sentences imposed for other crimes. A review of petitioner's April 3, 1977 sentencing Memorandum reveals that petitioner's adult criminal career began at age 18, in 1964 and continued unabated, even throughout the times he was incarcerated, because his criminal history includes multiple escapes from various prisons and the commission of new crimes, such as aggravated assaults, assaults with weapons, kidnappings, robbery while armed with a deadly weapon, etc., presumably to effectuate those escapes. Given petitioner's history, the USPC would be well within its discretion to deny parole if it believed that there was a reasonable probability that petitioner would again commit a crime.[10]

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED and dismissed with prejudice**.

**Within fourteen days, or before March 26, 2012**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v.

---

[10] The undersigned also agrees with the respondent that petitioner's reliance on the Uhuru decision is inapposite, because Uhuru was serving a single 97-year sentence, not multiple consecutive sentences as petitioner is. Further, also unlike the instant case, the record in Uhuru is devoid of any mention of Uhuru ever committing any institutional misconduct at all.

Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: March 19, 2012.

        /s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE